# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| NICOLE TAJKOWSKI, | Case No. 3:18-cv-000352 |
| Plaintiff, | District Judge Walter H. Rice |
| vs. | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Nicole Tajkowski has experienced debilitating health problems for many years—most notably pain in her lower back, obesity, fibromyalgia, Type II diabetes, depressive disorder, and anxiety disorder. In 2013, she asked the Social Security Administration to provide her with Disability Insurance Benefits (DIB). She asserted that she was eligible to receive DIB because, starting on May 30, 2008, her health problems constituted one or more disabilities.

The Social Security Administration has twice denied Plaintiff's application for DIB. Each denial (one in 2015, the other in August 2018) resulted from determinations by Administrative Law Judge Gregory G. Kenyon that Plaintiff was not under a disability. This Court vacated ALJ's Kenyon's first decision and remanded the matter for further proceedings. ALJ Kenyon's second decision is the focus of the instant case.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff contends that ALJ Kenyon's second decision contains essentially the same errors in reviewing the medical evidence that he made in his first decision, especially the errors the Court identified in his rejection of treating physician Dr. Tina Godwin's opinions. Plaintiff maintains that ALJ Kenyon essentially ignored this Court's previous decision. She seeks an Order reversing the ALJ's decision and remanding for payment of DIB or, at a minimum, and Order remanding for further administrative proceedings.

The Commissioner counters that substantial evidence, including opinions provided by record-reviewing medical sources, supports the ALJ's assessment of Plaintiff's residual functional capacity. The Commissioner maintains that the ALJ evaluated Dr. Godwin's opinions in accordance with Social Security Regulations and wisely declined to give her opinions controlling or deferential weight. The Commissioner asks the Court to affirm the ALJ's decision.

## II.     Background

### A.     <u>Plaintiff</u>

On the date Plaintiff's asserted disability began, she was 39 years old—a "younger person" under Social Security Regulations. 20 C.F.R. §404.1563(c). She graduated from high school and completed some college coursework. Her past jobs involved work as an appraiser, a sales representative, and a home-healthcare aide.

During her work life, Plaintiff paid enough into the DIB program to be insured until March 31, 2012. Consequently, to be eligible for DIB, she needed to establish that she was under a disability, starting on March 31, 2012—at the latest. After that, she was no longer insured under the DIB program and could not qualify for DIB. *See* 42 U.S.C. §423(a).

The Court's previous description of Plaintiff's testimony during the first hearing ALJ Kenyon held is incorporated herein by reference. (Doc. #6, *PageID* #s 1339-42).

Plaintiff testified during her most recent (June 2018) hearing held by ALJ Kenyon that she has "kind of all-over pain." (Doc. #6, *PageID* #1257). Much of the time she has pain in her legs. She explained:

> My thighs feel like they will be on fire. My knees just ache and sometimes burn with the pain. I do have it also in my arms. And, you know, one minute I can be having—experience pain in my thighs, and then maybe a couple of hours later…, it's … in my hands or my shoulders. It just kind of depends on what flares up at that moment.

*Id*. She feels pain in her back pain, like it is on fire. *Id*. at 1257-58. She estimates that when her pain flares up to its most severe level, it is 8 or 9 (presumably on a 10-point scale with 10 being the most painful). On good days, her pain level is 4. She has more bad days (4 or 5) during a week than good days. *Id*. at 1258.

Plaintiff has difficulty concentrating and remembering things. In her last job, she could not concentrate enough to correctly do the required paperwork. Concentration causes her difficulty when paying bills, and she needs her husband to verify that she's done it correctly.

Plaintiff has fibromyalgia that causes her fatigue. She is tired all the time yet has trouble sleeping at night. She often, but not every day, takes a nap. *Id*. at 1265.

She also has headaches at least two days a week. Her headaches can become migraine headaches. The pain is usually above her eyes and sometimes will move down to the back or base of her head. A headache can last a couple of days. She takes Tylenol but it does not usually help. She is not aware of anything that triggers her headaches. When she

3

has a headache, she is very sensitive to light. She must draw the window blinds and wear sunglasses when outside. *Id*. at 1261.

Plaintiff suffers from depression. She testified, "I find that being in so much pain it's hard to find happiness because I hurt all the time." *Id*. at 1262. At least once every couple of weeks she has a crying spell. She explained, "[I]f somebody looks at me the wrong way, I take it personally. If something is said, I'm hurt. It has nothing to do with me, I know that logically, but emotionally it just tears me up." *Id*. at 1263. She has trouble going places where there are other people. Grocery (or other shopping) is painful on her feet, and "there's a recovery time …." *Id*. She leaves her home about once every 2 to 3 weeks. On the occasions when she goes out socially (to a pizza place, for instance), she will need to recover in bed 1 or 2 days. *Id*. at 1267.

As to her physical abilities, she can stand no longer than 15 minutes, and walk 1 city block (before she's hurting and exhausted). *Id*. at 1264-65. She spends nearly all of her usual day lying down or sitting in a recliner. *Id*. at 1268. She tried knitting for about a year but stopped because she could not concentrate well enough to count the stiches. *Id*. at 1269. On days when her pain level is good, she may attempt to clean a section or room of the house. She would not clean the entire house because she needed frequent rest breaks. On days when her pain level is bad, she just lies down.

**B.     Medical Evidence**

The Court's previous description of the medical evidence in this case is incorporated by reference herein. (Doc. #6, *PageID* #s 1342-45). It is, however, worth repeating some information about Dr. Godwin's opinions:

4

Dr. Godwin…, completed interrogatories on February 19, 2014. At that time, she had been treating Plaintiff for one year. Dr. Godwin indicated that she treats Plaintiff for fibromyalgia, hypothyroidism, depression, degenerative disc disease, obstructive sleep apnea, periodic limb movement disorder, hypertension, and irritable bowel syndrome. She opined Plaintiff could not be prompt and regular in attendance because "debilitating and unpredictable pain [and] fatigue related to fibromyalgia limit [Plaintiff's] ability to attend work on a reliable basis due to needing rest/pain medication." For the same reasons, she could not demonstrate reliability. Further, Plaintiff could not withstand the pressure of meeting normal standards of work productivity and accuracy without significant risk of decompensation or worsening of impairments. Dr. Godwin explained, "fatigue [and] depression are profound making it impossible to predict days/times [Plaintiff] would be able to carry out any physical requirements [without] injury and social interaction [without] mental distress."

She opined that Plaintiff was unable to lift more than five pounds without pain. Further, she could stand and walk without interruption for less than twenty minutes for a total of less than one hour in an eight-hour workday and sit without interruption for thirty minutes for a total of one to two hours. She noted Plaintiff experiences fatigue after walking more than ten steps and pain after standing for more than one to two minutes. She could occasionally crouch and kneel but never climb, balance, stoop, or crawl.

Dr. Godwin found that reaching could cause Plaintiff weakness, pain, and fatigue. Additionally, prolonged handling, fingering, feeling, pushing, or pulling could cause fatigue of muscle groups. She indicated that muscle group fatigue leads to weakness and weakness leads to paralysis. Plaintiff exposure to heights, moving machinery, chemicals, temperature extremes, vibration, dust, noise, fumes, and humidity is restricted because all cause migraines. Dr. Godwin concluded she does not have the residual functional ability to do light or sedentary work on a sustained basis. She notes, "patient's pain [and] fatigue are constant [and] unpredictable requiring abnormal sleep patterns, frequent medical attention [and] pain control." Dr. Godwin also completed a mental impairment questionnaire regarding fibromyalgia. She opined Plaintiff has a history of widespread pain that has persisted for more than three months. Additionally, she indicated that Plaintiff experiences the following: muscle pain and weakness, fatigue, thinking problems, headaches, stomach and upper abdomen pain, numbness or tingling, dizziness, insomnia, depression, constipation, nausea, nervousness, diarrhea, heartburn, shortness of breath, and rash.

*Id*. at 1342-44 (internal citations omitted).

5

The ALJ relied on the opinions of Lynne Torello, M.D. who reviewed Plaintiff's records in July 2014. She opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and\or carry ten pounds, stand and/or walk for a total of six hours in an eight-hour day, and sit for a total of six hours. *Id*. at 131. She could never climb ladders, ropes, or scaffolds and could occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs. *Id*. at 131-32. Dr. Torello concluded that Plaintiff is not under a disability. *Id*. at 133.

**III.     "Disability" and The ALJ's Decision**

To be eligible for Disability Insurance Benefits a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a), (d); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* at 469-70.

As noted above, it fell to ALJ Kenyon to evaluate the evidence. He did so by conducting the 5-step sequential evaluation mandated by Social Security regulations, 20 C.F.R. §404.1520(a)(4). His significant findings for present purposes began at step 2, where he found that Plaintiff had many severe impairments—degenerate disc disease in her lumbar spine, fibromyalgia, obesity, obstructive sleep apnea, hypothyroidism, type II diabetes mellitus, history of irritable bowel syndrome, history of headaches, depressive disorder, anxiety disorder. (Doc. #6, *PageID* #1226).

6

At step 3, ALJ Kenyon found that through the date Plaintiff was last insured under the DIB program (March 31, 2012), she was not disabled under the Commissioner's Listing of Impairments, 20 C.F.R. Part 4, Subpart P, Appendix 1. *Id.* at 1230-32.

At step 4, ALJ Kenyon concluded that through the date Plaintiff was last insured, she had the residual functional capacity—or the most she could do in a work setting despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—to do "light work … subject to the following additional limitations: (1) no more than occasional crouching, crawling, kneeling, or stooping; (2) no more than occasional climbing of ramps or stairs; (3) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards such as unprotect heights or dangerous machinery; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) limited to performing unskilled, simple, repetitive tasks; (7) no more than occasional contact with co-workers, supervisors, and the general public; (8) no fast-paced production work or jobs involving strict production quotas; and (9) limited to performing jobs which involve very little, if any, change in job duties or work routine from one day to the next." *Id.* at 1232-37. ALJ Kenyon also concluded at step 4 that Plaintiff could no longer perform her past relevant work. *Id.* at 1237.

ALJ Kenyon determined at step 5 that Plaintiff could perform a significant number of jobs (machine tender/feeder, packer) that exist in the national economy. This meant that Plaintiff was not under a disability and not eligible for DIB. *Id.* at 1238-39.

## IV. Judicial Review

The Social Security Administration's denial of Plaintiff's applications for benefits—embodied in ALJ Kenyon's decision—is subject to judicial review along two lines: whether

he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

## V. Discussion

Plaintiff contends that ALJ Kenyon's second decision contains essentially the same errors in reviewing the medical evidence that he made in his first decision, especially the errors the Court identified in the ALJ's rejection of treating physician Dr. Godwin's opinions. Plaintiff asserts that the ALJ also erred by relied heavily upon his own lay interpretation of objective medical evidence and upon his fundamental misunderstanding of fibromyalgia.

8

The Commissioner argues that substantial evidence and good reasons support the ALJ's decision not to place controlling or deferential weight on Dr. Godwin's opinions. The Commissioner points out that Dr. Godwin was not Plaintiff's treating physician before her DIB insured status expired and did not begin to treat Plaintiff until May 2013, more than one year after her insured status expired. The Commissioner further relies on the ALJ's finding that Dr. Godwin's opinions were inconsistent with the objective medical evidence and that Plaintiff exaggerated her fibromyalgia pain levels and fatigue in light of indications in the medical records that her treatment was at least somewhat effective. The Commissioner does not directly address Plaintiff's contention that the ALJ failed to follow the Court's Order and repeated essentially the same errors he made in his first non-disability decision.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, much remains for the ALJ to consider:

9

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

Social Security ALJs are not free to ignore Judicial Orders:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 866, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner,* 383 F.3d 748, 758 (6th Cir. 1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion....

*Hollins v. Massanari,* 49 F. App'x 533, 536 (6th Cir. 2002).

When reviewing ALJ Kenyon's first decision concerning Plaintiff's DIB application, this Court identified several problems with his weighing of Dr. Godwin's opinions beginning with the ALJ's failure to address the treating physician rule. (Doc. #6, *PageID* #1349). But, in his second decision, the ALJ described the legal criteria applicable to determining whether a treating source's medical opinions were due controlling weight. Although the ALJ did not refer to this criteria as the treating physician rule, he describes the

correct legal criteria applicable under this rule. *See id*. at 1233. The ALJ then set forth the factors applicable to weighing treating physicians' opinions. *Id*. There is, however, no indication in the ALJ's decision that he considered the rebuttable presumption applicable to weighing treating source's opinions. As the Court previously explained, "'[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.'" *Id*. at 1349-50 (quoting *Rogers*, 486 F.3d at 242 (citing Soc. Sec. R. 96-2p, 1996 WL 374188, at *4)). This is problematic in the present case because the ALJ placed great weight on the opinions of Dr. Torello, a record-reviewing physician, without explaining why. *Id*. at 1234. The ALJ merely noted that Dr. Torello's opinions were consistent with his (the ALJ's) conclusion that "[n]o compelling evidence has been presented to show that the claimant lacked the capacity to perform the basic exertional capabilities (i.e., lifting, standing, walking, and sitting) for light work through the date last insured…." *Id*. at 1234. By crediting Dr. Torello's opinions without weighing them under any regulator factor, and by not recognizing the rebuttable presumption applicable to Dr. Godwin's opinions, the ALJ erred by subjecting Dr. Godwin's treating-source opinions more rigorous scrutiny than he applied to Dr. Torello's opinions. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379 (citing 20 C.F.R. §404.1527(c); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2).

What follows next in the ALJ's second decision is a list of reasons why he declined to provide either controlling or deferential weight to Dr. Godwin's opinions. *Id*. at 1233-34.

He first observed that "Dr. Godwin did not begin treating the claimant until well after the expiration of the claimant's insured status; the claimant's insured status expired on March 31, 2012 and Dr. Godwin did not begin treating the claimant until 2013." (Doc. #6, *PageID* #1233 (citing Exhibit 25F at 1)). This is chronologically accurate and, upon first glance, seems to align with the convention that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)). Dr. Godwin's opinions, however, are consistent (as the Court previously recognized) with the opinions of Plaintiff's former physician Dr. Kaiser, who treated Plaintiff before her insured status expired. *See id*. at 1351. Further, the ALJ discounted Dr. Godwin's opinions by relying on treatment notes in July 2017 concerning Plaintiff's recovery from surgery and MRI results from July 2017 without considering that these records post-date Plaintiff's insured status by five years. The ALJ thus ignored the lack of probative value such evidence generally has when the evidence supported his non-disability conclusion while, on the other hand, emphasizing its lack of probative value when it supported discounting Dr. Godwin's opinions. This inconsistent application of a single rule bespeaks an ALJ straining to deny benefits.

The ALJ also criticized Dr. Godwin's "assertions as highly speculative and based largely, if not entirely, on the claimant's subjective complaints; note, for example, that Dr. Godwin states that 'pain and fatigue are constant and unpredictable' and that such symptoms limit the claimant's ability to work on a 'reliable basis.' Such conjectural conclusion could only have been based on the claimant's own statements concerning her

12

perceived limitations." (Doc #6, *PageID* #1234). This ignores the Court's previous finding that "Dr. Godwin's notes reveal that her conclusions were based on her examinations of Plaintiff as well as Plaintiff's reports. Further, the ALJ does not recognize Dr. Godwin's notes indicate that she reviewed Plaintiff's medical history, and Dr. Godwin practices in the same office as Dr. Kaiser, Plaintiff's former primary-care physician." *Id*. at 1352-52. It is worth adding that there is no reference in Dr. Godwin's records hinting that she based her diagnoses or treatment decisions only on Plaintiff's subjective description of her symptoms. The ALJ's characterization of Dr. Godwin's opinions as "conjectural conclusions…," *id*. at 1234, lacks evidentiary support and is, instead, a strawman the ALJ created to further his flawed reasoning.

Accordingly, for the above reasons, Plaintiff' Statement of Errors is well taken.

## VI. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify,

13

or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Remand for an award of benefits is warranted in the present case because the evidence of disability is strong while contrary evidence is lacking. Plaintiff's testimony during both her administrative hearings is consistent with the opinions provided by her treating physician Dr. Godwin and her treatment records before her date last insured. In addition, there is no reasonable justification to delay an award of benefits while the matter is remanded for further proceedings and a third decision from an Administrative Law Judge when the case is already more than six years old. The record, moreover, is complete. A suggestion that further evidence might be gathered on remand concerning Plaintiff's disability status during her period of insured status makes no practical sense when her insured status expired in March 2012. Remand for further proceedings would serve no other purpose than delay. *See Worzalla v. Barnhart,* 311 F.Supp.2d 782, 800-01 (E.D. Wis. 2004) (Social Security Administration's obduracy in complying with law warranted an award of benefits where an acceptable decision had not been produced although claimant's application had been pending eleven years and had produced three hearings and two remands by the Appeals Council.)

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be reversed;

2. This matter be remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits based on Plaintiff's application for Disability Insurance Benefits protectively filed on March 11, 2013; and

3. The case be terminated on the Court's docket.


January 30, 2020 　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).